IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIANYI WANG,

             Plaintiff,                    13-cv-01541

                                           **ELECTRONICALLY FILED**

             v.

ARAM LEE,

             Defendant.

## MEMORANDUM ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.     Introduction

Currently before the Court is a Motion for Summary Judgment (Doc. No. 42) filed by

Defendant Aram Lee ("Defendant") in response to a Complaint filed by Plaintiff Tianyi Wang

("Plaintiff) in which he alleges the following: Invasion of Privacy (Count I); Wrongful Use of

Civil Proceedings (Count II); Fraud (Count III); Defamation (Count IV); Tortious Interference

with Contractual Relations (Count V); Intentional Infliction of Emotional Distress (Count VI);

and Negligence (Count VII).  Doc. No. 1.[1]  Jurisdiction is based upon diversity of citizenship.

Defendant moves this Court to enter judgment in her favor on all seven counts and contends the

allegations lack factual and legal support.  For the following reasons, Defendant's Motion for

Summary Judgment (Doc. No. 42) will be **DENIED**.

## II.    Procedural and Factual Background

In ruling on a Motion for Summary Judgment, the Court must consider all factual

allegations in the light most favorable to the nonmoving party.  *See Kaucher v. County of Bucks*,

---

[1] Plaintiff originally filed this Complaint in the Allegheny County Court of Common Pleas.  Doc.
No. 1.  It was removed to this Court on October 23, 2013.  Id.

455 F.3d 418 (3d Cir. 2006). The facts of this case, solely for the purposes of this Memorandum Order, are as follows:

Plaintiff was employed as a professor at the University of Pittsburgh Graduate School of Public Health ("GSPH") from September 1, 2005, to June 30, 2013. Doc. Nos. 43 and 56, ¶ 3. Defendant was a graduate student at GSPH starting in August 2011. Id. at ¶ 4. Defendant was a research assistant in Plaintiff's laboratory in the Department of Infectious Diseases and Microbiology. Id. at ¶ 5. Plaintiff was also Defendant's professor during some of her time at the University. Id. at ¶ 8.

In May 2012, the Parties began dating and having a sexual relationship. Id. at ¶ 7. The relationship included sending photos of their genitalia to each other. Id. at ¶ 11. Plaintiff was married during this relationship and other relevant times. Id. at ¶ 10.

The University of Pittsburgh had a policy forbidding sexual relationships between professors and their students. Id. at ¶ 9. Plaintiff was aware of the policy. Id. In mid-August 2012, Dr. Rinaldo, a University official, addressed reports about the affair with Plaintiff. Id. at ¶ 33. Plaintiff denied the affair. Id. at ¶ 35. Defendant also denied the affair when confronted by University officials. Id. at ¶ 37.

In September 2012, Plaintiff told his pastor's wife that he was having an affair. Id. at ¶ 40. That same month, Plaintiff received a letter from Church officials encouraging Plaintiff to cease his affair. Id. at ¶ 42. In October or November 2012, Plaintiff told two member of the Church that he was having an affair. Id. at ¶ 43. Around this time, Plaintiff's wife became aware that Plaintiff was having an affair. Id. at ¶ 45. Plaintiff admitted to an affair. Id. at ¶ 46. Plaintiff's parents and siblings were informed Plaintiff was having an affair by Plaintiff's wife. Id. at ¶ 47.

At some point in late 2012, Defendant learned she was pregnant with Plaintiff's child or children. Id. at ¶ 12. Defendant moved to the State of Washington. Id. at ¶ 13. Plaintiff sent Defendant cash, groceries, perfume, shoes, and other items for a time. Id. at ¶¶ 56-57.

On February 28, 2013 and March 2, 2013, Defendant sent emails to the Department Chair and Associate Dean for Education at GSPH and the University of Pittsburgh Police. Id. at ¶ 17. The email set forth that the Parties had previously had a sexual relationship, Plaintiff had been emailing Defendant, and Defendant feared for her safety. Doc. No. 45, 24. On February 28, 2013, Defendant sent a similar email to Plaintiff's wife and his church friends. Doc. Nos. 43 and 56, ¶ 18. On May 18, 2013, another email outlining the relationship (including that Plaintiff was disgusted by his wife and was sending money and other gifts to Defendant but would never see the twins) was sent to Plaintiff's wife and 37 associates and personal acquaintances of Plaintiff. Id. at ¶ 19. A photograph of Plaintiff's penis was attached. Id.

Prior to May 2013, Plaintiff applied for a faculty position at the University of Alabama at Birmingham. Id. at ¶ 96. Plaintiff contacted Dr. Luo, a professor at the University of Alabama, to inquire about a faculty opening. Id. at ¶ 97. Plaintiff told Dr. Luo he was leaving the University of Pittsburgh, in part, because he had an affair with Defendant. Id. at ¶ 98. Plaintiff told Dr. Luo to contact Lt. David Kirchner of the University of Pittsburgh Police as a reference. Id. at ¶ 100. Lt. Kirchner had been involved with Plaintiff and Defendant after Defendant contacted police in March 2013 about the affair. Id. at ¶ 101. Lt. Kirchner agreed to speak with the University of Alabama. Id. at ¶ 102. It is unknown if Lt. Kirchner was contacted. Id. at ¶ 103. When contacted by Plaintiff, Dr. Luo indicated that officials from the University of Alabama had spoken with the University of Pittsburgh. Id. at ¶ 104. The conversation raised

concerns and prevent them from offering Plaintiff a faculty position. Id. The concerns related to Plaintiff's alleged harassment of Defendant and Defendant's safety concerns. Id.

Plaintiff resigned from his associate professor position at the University of Pittsburgh on June 30, 2013. Id. at ¶ 84.

In June 2013, Plaintiff applied for a faculty position at the University of Maryland. Id. at ¶ 86. He was invited to conduct a seminar on July 29, 2013, as part of a job interview for that position. Id. at ¶ 87.

On July 23, 2013, Defendant filed an anti-harassment action against Plaintiff in the Superior Court of Snohomish County, Washington. Id. at ¶ 48. Said petition was denied. Id. at ¶ 49.

On July 24, 2013, Defendant sent an email to University of Maryland officials that set forth that she was granted a protection order from Plaintiff in Washington. Doc. No. 45, Exhibit 5. Defendant "saw on [a] website" that Plaintiff was going to give a speech at the school later that week and requested University officials to serve Plaintiff with attached documents during the seminar. Id. Plaintiff conducted the seminar on July 29, 2013. Id. at ¶ 91.

On September 4, 2013, Defendant filed a second anti-harassment action in the Superior Court of Snohomish County, Washington. Id. at ¶ 51. Plaintiff appeared by telephone during the hearing on the petition. Id. at ¶ 52. On October 11, 2013, the Superior Court of Snohomish County, Washington, entered a permanent anti-harassment order against Plaintiff, which prohibits him from being within 100 yards of Defendant or making any contact with Defendant. Id. at ¶¶ 53-54.

In October or November 2013, Plaintiff had a second interview at the University of

Maryland.  Id. at ¶ 92.  Plaintiff was offered a three-year contract worth $400,000.00.  Id. at ¶ 93.

Plaintiff rejected the offer.  Id. at ¶ 94.

## III.    Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving

party, "the movant shows that there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see also Melrose, Inc. v.*

*Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). *Manolovich v. Park*, 461 Fed. Appx. 187, 190 (3d

Cir. 2012).

A fact is "material" if proof of its existence or non-existence might affect the outcome of

the suit under applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986); *see*

*also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  Smith v. Borough of Dunmore,

516 Fed.Appx. 194, 200 (3d Cir. 2013).  Disputes must be both (1) material, meaning concerning

facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning

there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to

resolve the parties' differing versions of the truth at trial.  *In re Lemington Home for Aged*, 659

F.3d 282, 290 (3d Cir. 2011); *see also S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729

F.3d 248 (3d Cir. 2013).

A party moving for summary judgment has the initial burden of supporting its assertion

that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record –

i.e., depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1)

the materials cited by the non-moving party do not establish the presence of a genuine dispute, or

(2) that the non-moving party cannot produce admissible evidence to support its fact(s).

Fed.R.Civ.P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001)). Estate of Beim v. Hirsch, 121 Fed.Appx. 950, 953 (3d Cir. 2005).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Gallup v. Clarion Sintered Metals, Inc., 489 Fed.Appx. 553, 555 (3d Cir. 2012).

In reviewing a motion for summary judgment, the court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007).

## IV. Discussion

Summary judgment is only appropriate when the material facts of the case are not in dispute. That is not the case here. The following are examples of material facts that are in dispute: the extent the Parties displayed affection in public; whether Defendant was pregnant with twins and what happened to the pregnancy; what items Plaintiff sent to Defendant from

January 24 to February 20, 2013; whether Defendant accepted money that was allegedly sent to her by Plaintiff; if Defendant authored various emails; the purpose of these emails; the basis of Defendant's anti-harassment petitions; when and how the University of Pittsburgh became aware of the Parties' affair; the nature of the disciplinary consequences faced by a professor at the University of Pittsburgh where a professor had a relationship with a student; if Plaintiff was forced to resign from the University of Pittsburgh or did so to avoid an investigation by University officials into his affair with Defendant; and whether the University of Maryland's offer was reasonable or a "polite way of rejecting" Plaintiff.  These disputed facts are central to Plaintiff's claims.

Therefore, summary judgment is not appropriate.  The Court must make credibility determinations before the facts of this case can be determined.  The Parties will be permitted to present their witnesses and applicable evidence during a non-jury trial.  Only then may the facts of the case be applied to the applicable law.

**V. Order**

AND NOW, this 22nd day of April, 2014, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Doc. No. 42) is **DENIED**.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All counsel of record